## STATE OF WEST VIRGINIA

## SUPREME COURT OF APPEALS

**CRAIG A. ATKINS,**
**Claimant Below, Petitioner**

**vs.)   No. 20-0402** (BOR Appeal No. 2054914)
                    (Claim No. 2012038982)

**BECKLEY RALEIGH YMCA,**
**Employer Below, Respondent**

## MEMORANDUM DECISION

Petitioner Craig A. Atkins, by counsel Reginald D. Henry, appeals the decision of the West Virginia Workers' Compensation Board of Review. Beckley Raleigh YMCA, by counsel Steven K. Wellman, filed a timely response.

The issue on appeal is the amount of permanent partial disability Mr. Atkins sustained as a result of the compensable injury. Mr. Atkins was granted a 2% award on September 30, 2016, and he requested to have his claim reopened for the consideration of additional permanent partial disability benefits. The claims administrator denied the reopening request on July 22, 2019. The Workers' Compensation Office of Judges ("Office of Judges") affirmed the claims administrator's order in a decision dated December 5, 2019. The decision was affirmed by the Board of Review on May 21, 2020.

The Court has carefully reviewed the records, written arguments, and appendices contained in the briefs, and the case is mature for consideration. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

The standard of review applicable to this Court's consideration of workers' compensation appeals has been set out under W. Va. Code § 23-5-15, in relevant part, as follows:

> (b) In reviewing a decision of the board of review, the supreme court of appeals shall consider the record provided by the board and give deference to the board's findings, reasoning and conclusions.

1

(c) If the decision of the board represents an affirmation of a prior ruling by both the commission and the office of judges that was entered on the same issue in the same claim, the decision of the board may be reversed or modified by the Supreme Court of Appeals only if the decision is in clear violation of Constitutional or statutory provision, is clearly the result of erroneous conclusions of law, or is based upon the board's material misstatement or mischaracterization of particular components of the evidentiary record. The court may not conduct a de novo re-weighing of the evidentiary record.

*See Hammons v. W. Va. Off. of Ins. Comm'r,* 235 W. Va. 577, 582-83, 775 S.E.2d 458, 463-64 (2015). As we previously recognized in *Justice v. West Virginia Office Insurance Commission*, 230 W. Va. 80, 83, 736 S.E.2d 80, 83 (2012), we apply a de novo standard of review to questions of law arising in the context of decisions issued by the Board. *See also Davies v. W. Va. Off. of Ins. Comm'r*, 227 W. Va. 330, 334, 708 S.E.2d 524, 528 (2011).

Mr. Atkins, a grounds keeper, was injured in the course of his employment on May 11, 2012, when he fell while painting a soccer field. He sought treatment on May 23, 2012, at MedExpress and reported that he injured both knees, but only the right knee was painful. He was diagnosed with a knee sprain. X-rays of the right knee showed mild degenerative narrowing in the joint spaces and a small area of calcification. X-rays of the left knee showed mild narrowing of the joint spaces. The Employees' and Physicians' Report of Injury was completed that day and indicates Mr. Atkins was diagnosed with a right knee sprain after falling while painting a soccer field. A right knee MRI was performed on June 25, 2012, and showed early subchondral collapse of the medial femoral condyle, fluid in the pretibial bursa, and a complex tear of the medial meniscus. The claim was held compensable for right knee sprain/strain.

Jerry Scott, M.D., performed an Independent Medical Evaluation on January 28, 2014, in which he diagnosed bilateral degenerative disease with chondromalacia and a medial meniscus tear that were both degenerative and preexisting. He opined that Mr. Atkins had reached maximum medical improvement and assessed 0% impairment.

In an Office of Judges' decision dated June 3, 2014, torn medial meniscus in the right knee was added as a compensable condition in the claim. The Order also noted that "[i]t is found that the overall record supports that the claimant did have a contusion of both knees which resulted in a compensable injury." Pursuant to the Office of Judges' Order, right knee torn meniscus was added to the claim on July 2, 2014. On July 21, 2014, bilateral knee x-rays showed degenerative changes in the medial compartment of both knees with joint space narrowing.

Bruce Guberman, M.D., performed an Independent Medical Evaluation on December 11, 2014, in which he diagnosed chronic posttraumatic strain and contusion of both knees and medial meniscus tear of the right knee. He opined that Mr. Atkins had 4% impairment for each knee for a total of 8% impairment. He further opined that no apportionment was necessary for the mild degenerative changes seen on x-rays because Mr. Atkins would have received no impairment based on those findings prior to the compensable injury.

On January 16, 2015, H.R. Fleschner, D.C.C.R.P., performed an Independent Medical Evaluation in which he diagnosed chronic posttraumatic strain of the right knee, right medial meniscus tear, and chronic posttraumatic sprain/contusion of the left knee. He assessed 4% impairment for each knee. Dr. Fleschner declined to apportion the impairment because Mr. Atkins had no preexisting history of knee pain, no medical history of knee conditions, and he was fully capable of performing his work duties and activities of daily living prior to the compensable injury.

Prasadarao Mukkamala, M.D., performed an Independent Medical Evaluation on May 8, 2015, in which he diagnosed bilateral knee contusions and preexisting degenerative arthrosis of the knees. He assessed 0% impairment for the compensable injury. Dr. Mukkamala opined that Mr. Atkins's ongoing complaints are due to his preexisting arthrosis.

In an Independent Medical Evaluation on September 28, 2015, Paul Bachwitt, M.D., diagnosed left knee sprain/strain and right knee sprain/strain superimposed on preexisting degenerative changes in both knees. He opined that the right knee meniscal tear was likely related to the compensable injury and assessed 0% impairment.

The Office of Judges granted a 4% permanent partial disability award on December 11, 2015. The Board of Review reversed the decision in its May 11, 2016, Order and remanded the case for another impairment evaluation because there was no physician of record that recommended 4% impairment. It also found that none of the reports of record accurately assessed Mr. Atkins's impairment.

Marsha Bailey, M.D., performed an Independent Medical Evaluation on August 3, 2016, in which Mr. Atkins reported constant pain in both knees. Dr. Bailey noted that he had swelling and varicosities in both legs. His range of motion was restricted by discomfort. Dr. Bailey found that the area seen on x-ray as showing degenerative joint disease was the same area that was tender to palpitation on examination. She diagnosed bilateral knee contusions, possible sprain/strain of both knees, medial meniscus tear of the right knee, bilateral knee degenerative joint disease, and osteoarthritis. Dr. Bailey opined that the contusions, possible sprain/strain to both knees, and right meniscal tear were all related to the compensable injury. She determined that Mr. Atkins had reached maximum medical improvement and assessed 8% right knee impairment and 4% left knee impairment for a total of 12%. However, she apportioned 10% to preexisting, noncompensable degenerative joint disease, osteoarthritis, and obesity. The claims administrator granted a 2% permanent partial disability award on September 30, 2016.[1]

In an April 4, 2017, supplemental report, Dr. Guberman stated that he disagreed with Dr. Bailey's apportionment of 10% impairment to preexisting conditions. Dr. Guberman opined that her apportionment was inconsistent with Mr. Atkins's history of no prior knee symptoms and the

---

[1]The 2% award granted by the claims administrator was affirmed by the Office of Judges on February 23, 2018, and subsequently appealed to both the Board of Review and this Court. The Board of Review affirmed the decision of the Office of Judges on July 20, 2018. On April 25, 2019, this Court affirmed the Order of the Board of Review.

fact that he had no problem performing his work and daily living activities prior to the compensable injury. Dr. Guberman concluded that there is no history or objective findings indicating Mr. Atkins had any knee impairment prior to the compensable injury.

David Jenkinson, M.D., performed an Independent Medical Evaluation on November 14, 2017, in which he noted that Mr. Atkins had full range of motion in both knees. Dr. Jenkinson opined, based on imaging studies, that Mr. Atkins had advanced osteoarthritis in both knees, with the most severe changes being in the medial compartments. He further opined that the medial meniscus tear was part of the degenerative process and not due to the compensable injury. Dr. Jenkinson assessed 10% impairment for the right knee and 8% for the left for a total of 17% impairment, but he apportioned the entire amount to preexisting, advanced osteoarthritis.

Mr. Atkins was evaluated by Michael J. Kominsky, D.C., who submitted a report dated May 15, 2019. The physical examination revealed moderate tenderness, decreased range of motion, and decreased sensory response. The assessment was bilateral knee contusion, progressive loss of motion in bilateral knees, bilateral valgus deformity, right complex medial meniscus tear , and post-traumatic osteoarthritis. Dr. Kominsky found Mr. Atkins to be at his maximum medical improvement and recommended 12% whole person impairment for the right knee (8% for Varus deformity and 4% for range of motion loss). He also opined 4% whole person impairment for the left knee for range of motion loss for a total of 16% whole person impairment. However, due to preexisting bilateral degenerative changes of the knees, Dr. Kominsky apportioned 4% to degenerative changes of the knees, as well as 2% for Varus deformity of the left knee for a total combined apportionment of 6%. Thus, Dr. Kominsky recommended 10% whole person impairment due to the compensable injury.

Mr. Atkins was evaluated by Paul Bachwitt, M.D., for an Independent Medical Evaluation on August 1, 2019. The physical examination of the knees revealed tenderness and range of motion loss. Dr. Bachwitt reported that Mr. Atkins was suffering from non-compensable osteoarthritis in both knees and joint space narrowing due to age and weight. Dr. Bachwitt also reported that the bilateral knee sprains due to the compensable incident of May 11, 2012, had resolved. It was opined that he suffered no aggravation or progression of the compensable injury and that his current ongoing condition was due to osteoarthritis of both knees and joint space narrowing.

Dr. Kominsky submitted a supplemental report dated September 11, 2019, in which he opined that Mr. Atkins had preexisting degenerative changes and Varus deformity bilaterally but that the trauma sustained as a result of the compensable injury caused a worsening of the Varus deformity. He was of the opinion that the Varus deformity had eroded more aggressively than normal aging of the medial cartilage of the right knee due to the compensable injury. Dr. Kominsky found 8% whole person impairment solely attributable to the right knee as a result of the compensable injury.

In a supplemental report dated September 19, 2019, Dr. Bachwitt disagreed with Dr. Kominsky's findings since his examination revealed normal range of motion and showed no evidence of a meniscal tear in either knee. Dr. Bachwitt opined that Mr. Atkin's Varus deformity

is related to his non-compensable degenerative arthritis that preexisted the compensable injury as well as his age and weight.

The Office of Judges issued its decision on December 5, 2019, and found that Mr. Atkins failed to establish that he suffered an aggravation or progression of his compensable injury. It was noted that Dr. Kominsky's impairment rating includes impairment for non-compensable conditions. The claims administrator's Order dated July 22, 2019, denying reopening of the claim for permanent partial disability benefits was affirmed. The Board of Review adopted the findings of facts and conclusions of law of the Office of Judges and affirmed the decision in an Order dated May 21, 2020.

After review, this Court agrees with the decision of the Office of Judges, as affirmed by the Board of Review. The Office of Judges found that Dr. Kominsky's findings were not persuasive in light of the other evidence in the record. Thus, a clear preponderance of the reliable evidence of record fails to establish a progression, aggravation, or some fact not previously considered that would result in additional impairment attributable to the compensable injury of May 11, 2012.

Affirmed.

**ISSUED: October 26, 2021**


**CONCURRED IN BY:**

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead

**DISSENTING:**

Justice John A. Hutchison
Justice William R. Wooton

Wooton, Justice, dissenting, and joined by Justice Hutchison:

West Virginia Code §§ 23-5-2 and -3 entitle an employee to a reopening of his or her claim for "further adjustment" where he or she can show "progression or aggravation in the claimant's condition, or some other fact or facts which were not previously considered in its former findings and which would entitle the claimant to greater benefits than the claimant has already received[.]" The standard of proof for reopening has been held by this Court to require "nothing more than any evidence which would tend to *justify*, but not to compel the inference that there has been a progression or aggravation of the former injury." Syl., *Harper v. State Workmen's Comp. Com'r*, 160 W. Va. 364, 234 S.E.2d 779 (1977) (emphasis added). In the instant case, the majority has affirmed the Office of Judges and Board of Review's refusal to reopen Mr. Atkins' claim based

on nothing more than a single, conclusory statement that the "clear preponderance of the reliable evidence of record" fails to justify it.

Mr. Atkins injured his knees after falling while striping a soccer field; his claim was held compensable for knee sprain/strain and a right meniscal tear. He was granted a 2% permanent partial disability, which was affirmed by this Court. He then requested a reopening of his claim for worsening of his knee condition and submitted a report from Dr. Kaminsky indicating he had an additional 10% impairment over his prior 2% award, for a net 8% worsening of his condition.

In analyzing Mr. Atkins' claim for reopening, the Office of Judges discarded *all* medical evidence other than Mr. Atkins' evaluator, Dr. Kominsky, finding all of it unreliable:

> [T]he law of the case is that [the reports of Drs. Scott, Mukkamala, Bachwitt, Guberman, and Fleschner] are unreliable. Further, the [Supplemental] report of Dr. Guberman . . . is likewise found unreliable. . . . In support of its position that the claim should not be reopened, the employer submitted the reports of Dr. Bachwitt. However, Dr. Bachwitt's reports are found unreliable.

Nonetheless, the Office of Judges then rejected the only remaining medical evidence of record—Dr. Kominsky's 10% whole person impairment finding that the rating 1) improperly included a worsening of a pre-existing varus deformity[2] of the right knee; and 2) failed to identify which portion of the range of motion impairment was attributable to non-compensable osteoarthritis.

However, both of these conclusions are contrary to the facts and the law applicable to reopenings, as stated above. With regard to the varus deformity, Dr. Kominsky opined that "the trauma sustained as a result of his [work] injury caused a worsening of his varus deformity" and that "if Mr. Atkins had not had this injury there would have been no increase in his varus deformity. Without the trauma, he would have remained at a non-ratable category of impairment[.]" Plainly, Dr. Kominsky's opinion reflects a "progression" of Mr. Atkins' original injury in the form of distinct worsening of his varus deformity, which would not otherwise have occurred.

More specifically, the Office of Judges concluded that the impairment identified by Dr. Kominsky constituted an "aggravation" of a pre-existing injury, which is non-compensable under *Gill v. City of Charleston*, 236 W. Va. 737, 783 S.E.2d 857 (2016). However, not only did the majority herein not rely on *Gill* to affirm the Office of Judges and Board of Review, it does not even mention it in its memorandum decision. Nevertheless, the Office of Judges' misapplication of *Gill* (a decision warranting a revisit in its own right) is best demonstrated by *Gill*'s discussion of cases which "recognize compensability of *an injury that may have occurred only because of a preexisting injury*" and clarifies that an aggravation of a noncompensable preexisting injury is simply not "*fully* compensable." *Id*. at 746, 783 S.E.2d at 866 (emphasis added). In full compliance with *Gill*, Dr. Kominsky clearly opined that but for the trauma of the work-related

---

[2] A varus deformity causes an individual to become bow-legged.
https://www.healthline.com/health/varus-knee (last visited October 25, 2021).

injury the *worsening* of the varus deformity—the discrete injury for which he rated impairment—would not have occurred. He likewise did not seek to make the varus deformity fully compensable, apportioning 2% of the deformity as pre-existing.

Finally, the Office of Judges' feigned uncertainty about whether the impairment for loss of range of motion might be attributable to non-compensable osteo-arthritis is undermined by Dr. Kominsky's clear statement that he was apportioning 2% per knee to "degenerative changes[.]" It is therefore clear that in refusing Mr. Atkins' reopening, the Office of Judges acted well outside of the medical evidence of record, misapplied the law, and failed to afford Mr. Atkins the benefit of his burden of proof requiring only that an inference of progression be "justified."

Accordingly, I respectfully dissent. I am authorized to state that Justice Hutchison joins me in this dissent.